IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREG DUNIGAN, # B-87014,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 15-cv-1214-NJR |
| ) | |
| **MELISSA COFFEY,** ) | |
| **COUNSELOR GROTT, WARDENS,** ) | |
| **ADJUSTMENT COMMITTEE,** ) | |
| **COUNSELOR RYANN,** ) | |
| **COUNSELOR NIPPE, GAIL WALLS,** ) | |
| **OFFICER ELLETTE, NICOLE LEWIS,** ) | |
| **MORGAN TEAS, LT. PHAROE,** ) | |
| **SGT. SCOTT, GETTING,** ) | |
| **LORI OAKLEY, DR. FURENTES,** ) | |
| **MENARD CORRECTIONAL CENTER,** ) | |
| **and UNKNOWN PARTIES (Mailroom,** ) | |
| **Medical Records, Jane Doe Nurse, and** ) | |
| **John Doe Physical),** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff filed this *pro se* civil rights action seeking relief under 42 U.S.C. § 1983 while he was incarcerated at Menard Correctional Center ("Menard"). Since the case was filed, Plaintiff has been released on parole (Doc. 13). Because Plaintiff was a prisoner at the time he filed this action, the Court is required to conduct a preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, which directs the Court to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. This threshold review has been complicated, however, by Plaintiff's attempts to amend, supplement, and replace sections of his original complaint. Therefore, the Court must

first evaluate these various documents to determine what pleading(s) constitute the operative complaint. Several pending motions are also before the Court and shall be disposed of below.

Plaintiff submitted his *pro se* complaint in this case on October 22, 2015 (Doc. 1, p. 2). It was received and filed by the Clerk of Court on November 2. This original complaint consists of 24 pages (Docs. 1, 1-1), and includes 50 pages of exhibits (Docs. 1-2, 1-3). Plaintiff names thirteen individuals as Defendants, as well as several unknown parties, the Adjustment Committee, and Menard Correctional Center. His statement of claim begins with:

> This Complaint is against Menard and Menard Medical Staff for violating my constitutional rights in various different ways starting from denial of medical, and mental treatment, assistance, and medication for serious and deadly illnesses beginning from 2-13-15 . . . until today which is 10-22-15.

(Doc. 1, p. 5). He then accuses Defendants generally of committing a host of offenses ranging from verbal abuse to theft, bribery, conspiracy, and attempted murder. *Id*.

Much of the complaint focuses on alleged deliberate indifference to Plaintiff's medical needs. He claims to suffer from stage 3 syphilis, herpes, seizures, high blood pressure, asthma, osteomyelitis ("a deadly bone infection of the mouth"), migraine headaches from a previous brain surgery, and severe stress and depression (Doc. 1, pp. 6, 10). He was not treated or given his prescribed medications for these conditions, with a brief exception. The complaint does not identify which of the Defendants failed to provide medical treatment to Plaintiff.

Turning to a different issue, the complaint states that Defendants Melissa Coffey (Mental Health) and Grott (Counselor) conspired to falsely accuse Plaintiff of sexual misconduct in order to have him thrown into "solitary confinement," where he spent 60 days (Doc. 1, pp. 12-13; Doc. 1-1, pp. 3-5). They also withheld legal documents from Plaintiff so that he was unable to give them to his lawyer (who was appointed to represent Plaintiff in a previously-filed case still pending before this Court, *Dunigan v. Lang, et al.*, Case No. 15-487-NJR-DGW). Because of

this, twenty defendants were left out of *Dunigan v. Lang*.

Plaintiff abruptly concludes the statement of claim by saying that he is out of ink, and he will "send the rest next week" (Doc. 1-1, p. 6). He does include a request for relief, in which he asks for immediate medical release from prison, dismissal of the criminal conviction for which he is now serving time, financial compensation, a divorce from his wife, and that Defendants Pollion, Lang,[1] Furentes, Walls, and Lewis be sentenced to jail time (Doc. 1, pp. 9-10).

**Proposed Amendments/Additions to Complaint**

Several weeks after he filed the original complaint, Plaintiff mailed a 401-page document to the Court, which was received on November 23, 2015. On November 24, 2015, the Court received another 72 pages submitted via electronic transmission. On December 15, 2015, another 74-page submission was received electronically. None of these documents was filed in the record upon their receipt, pending review of the material. Each submission was construed as a motion to amend the complaint, and was noted as such in the Court's docket sheet (Docs. 6, 9). On December 17, 2015, Plaintiff was ordered to cease filing additional documents until the Court could complete its review of the voluminous material he had already submitted (Doc. 10).

Subsequently, Plaintiff filed two "Notices" discussing the contents of the three sets of documents he submitted in November and December 2015. The "Notice" filed on December 29, 2015 (Doc. 11) instructs the Court to disregard a letter Plaintiff sent a day earlier – however, the Court has no record of receiving an earlier letter from Plaintiff. He further notes that the 72-page set of documents received by the Court on November 24, 2015, "was a mistake" because it included a 23-page statement of claim that he did not intend to file in this case, however, he wanted the remaining documents to be included with the 401 pages received on November 23,

---

[1] Pollion and Lang are not named as Defendants in this action, but are Defendants in *Dunigan v. Lang, et al.*, Case No. 15-487-NJR-DGW.

2015. Finally, he notes that the 74 pages that were electronically filed on December 16, 2015, were also a mistake because they were duplicates of the 72-page document. He requests the Court to discard the 74-page document of December 16 (Doc. 11, p. 2). He adds that after ten months of complaining, he finally received some treatment from the prison medical staff for his syphilis and herpes.

On January 13, 2016, Plaintiff filed a second "Notice," to state that he had made other mistakes when sending the 401-page set of documents (Doc. 12). He erroneously included the original statement of claim from his first case, *Dunigan v. Lang, et al.*, Case No. 15-487-NJR-DGW, near the end of the complaint. He requests the Court to send it back to him if it is not needed. He may also have mistakenly added "a few documents" from his attorney on that case, which should not have been included.

Finally, Plaintiff filed a motion requesting a status report on the case and a copy of the 401-page complaint, because he mistakenly "sent a lot of papers" that actually belonged to his previous case filed in this Court (Doc. 14).

**1.** *Summary of 401-Page Document Received November 23, 2015*

Sandwiched between other documents in this submission, Plaintiff included a five-page addition to the original statement of claim (Part 1 of 11/23/15 documents, pp. 5-9).[2] The following page announces that, "Next are the 20 Defendants and what they are guilty of" (Part 1 of 11/23/15 documents, p. 10). Those descriptions span the next 24 pages of the document, and include several nearly incomprehensible pages where Plaintiff has scrawled his allegations in circular fashion around the margins and interspersed between the typed portions of various printed documents (Part 1 of 11/23/15 documents, pp. 11-35).

---

[2] The 401-page document was scanned and saved in the Clerk's electronic filing system for storing proposed documents submitted by prisoners. The page references in this Order correspond to the pagination of the electronic documents, which were sorted into six parts because of their size.

Plaintiff includes a new prayer for relief (signed on November 8, 2015) and asks the Court to "take the other request for relief form out and use this one" (Part 1 of 11/23/15 documents, p. 3). Later on, he includes yet another request for relief, dated June 21, 2015 (Part 1 of 11/23/15 documents, p. 38).

The pages following the June 21, 2015, request for relief include several sections of disjointed narratives, some of which might be the statement of claim from *Dunigan v. Lang* that Plaintiff mistakenly included with his submission. Plaintiff includes multiple exhibits, such as copies of call passes, grievances, letters, inmate trust fund statements, medical records, and other documents, many of which bear questionable relevance to his claims. On many of these documents, Plaintiff has scrawled hand-written notes to the Court and/or additional allegations, sometimes by writing on top of the printed portion of his documents, as well as around the margins and in other available white space. The documents include several lists compiled by Plaintiff: problems that occurred while he was in Menard; examples of how he was treated while in solitary confinement; and "statements of conspiracy to murder" (Part 2 of 11/23/15 documents, pp. 1-66). Some of the documents are fact sheets on the sexually transmitted diseases Plaintiff claims to suffer from, on which he has added handwritten commentary (Part 2 of 11/23/15 documents, pp. 65-66; Part 3 of 11/23/15 documents, pp. 1-4).

The final document he includes is a copy of the Second Amended Complaint prepared and filed by Plaintiff's attorney in *Dunigan v. Lang*, Case No. 15-cv-487-NJR-DGW (Part 6 of 11/23/15 documents, pp. 57-60).

### 2. *Summary of 72-Page Document Received November 24, 2015*

The first five pages of this submission is a letter directed toward the undersigned Judge, in which Plaintiff requests the Court to appoint the attorney who was recruited to represent him

in *Dunigan v. Lang* to represent him in this second case as well. He complains that he has been improperly housed in Menard with violent inmates when he should have been placed in a medium-security prison, and he raises several other ancillary issues.

The next 22 pages are labeled "Continue from Statement of Claim," and appear to be entirely new allegations against Defendants Getting, Teas, Walls, Scott, Pharoe, Warden Lashbrook, Grott, Warden Brooks, Ryann, and Oakley (Part 1 of 11/24/15 documents, pp. 6-27). Plaintiff then includes 45 additional pages of grievances and other documents, many with hand-written annotations.

This 72-page set of documents does not include a case caption, list of defendants, or a prayer for relief.

## Disposition of Motions to Amend Complaint (Docs. 6 & 9)

Federal Rule of Civil Procedure 15(a)(1)(A) permits a party to amend its pleading once as a matter of course within 21 days after serving it. An amended pleading must stand on its own, without referring to or incorporating any other separate document, because an amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).

When a proposed amended pleading is received, the Clerk will either scan and save it for review (as was done in this case) or file it in its entirety – but will not perform clerical functions such as sorting, reorganizing, substituting pages, or culling out certain sections, as Plaintiff has requested in his "Notices." A litigant is responsible for preparing and presenting his documents to the Court in proper form. Neither the Clerk nor the Judge can do those tasks for him.

If the Court were to file Plaintiff's proposed amended pleadings in the order they were submitted, the 401-page document (received on November 23, 2015) would replace the original

complaint (Doc. 1), and the original complaint would then become a nullity. Then in turn, the 72-page document (received by electronic submission on November 24, 2015) would be filed in place of the 401-page document, rendering it obsolete. Plaintiff would be left with the 72-page amended pleading as his only operative complaint.[3] That 72-page document is insufficient to stand on its own as an amended complaint. Aside from being confusing and disjointed, it lacks a caption or discernible list of defendants and does not include any request for relief. *See* FED. R. CIV. P. 8(a) (a pleading must contain a "short and plain statement of the claim" showing entitlement to relief, and "a demand for the relief sought"). Plaintiff also failed to sign the document as is required for a complaint or amended complaint. *See* FED. R. CIV. P. 11(a). Those omissions would lead to the dismissal of the 72-page complaint pursuant to Rules 8 and 11. Furthermore, this document makes no mention of several of the Defendants listed in the original complaint, so its filing would result in Plaintiff abandoning his claims against those parties.

Due to these flaws in the 72-page document, the Court could instead file the earlier 401-page document as an amended complaint. Its sheer length and the convoluted way in which Plaintiff attempted to present his claims by annotating multiple exhibits would likely result in its dismissal, however, pursuant to Rule 8's requirement for a "short and plain statement of the claim." And again, the filing of the 401-page amendment would have the result of nullifying Plaintiff's original pleading (Doc. 1).

Plaintiff's statement on the original complaint stating he would "send the rest next week," and his "Notices" indicate that it was not his intention to abandon either the original complaint (Doc. 1) or the 401-page document by replacing them with the 72-page amendment. Instead, he evidently intended the 401-page document and the 72-page document to be *added* to his initial

---

[3] As Plaintiff requested in his "Notice" at Doc. 11, the Court shall disregard the 74-page document received on December 16, 2015, because it was a duplicate submitted in error.

pleading, with the exceptions that the Court should discard the original request for relief in Doc. 1 and substitute the new one in its place, and should disregard or "send back" certain sections. In other words, Plaintiff has attempted to add to his original complaint, and substitute certain pages, in a piecemeal fashion. This is often referred to as amendment by interlineation, and it is not permitted. *See* FED. R. CIV. P. 8(a). Instead, all claims against all defendants must be set forth in a single document.

Rather than file either the 401-page proposed amendment or the 72-page document, which would result in nullifying and replacing Plaintiff's original claims in Doc. 1, and would leave Plaintiff with an amended complaint which would be subject to dismissal, the Court **DENIES** the implied motions to amend at Docs. 6 and 9. As a result, the operative complaint in this action is the original pleading at Doc. 1 (including Docs. 1-1, 1-2, and 1-3), with no further additions.

Because Plaintiff has shown that he intended to include other claims and facts beyond what he presented in Doc. 1, he shall be given an opportunity to submit a proper amended complaint. Plaintiff's amended complaint shall be subject to review under § 1915A. If Plaintiff does not submit an amended complaint, the Court shall conduct the required merits review pursuant to § 1915A on the original complaint (Doc. 1) as it now stands.

### Other Pending Motions

Plaintiff has filed a motion for recruitment of counsel (Doc. 5). In it, he asks the Court to appoint Attorney Ted Gianaris, who was recruited to represent him in his prior case (*Dunigan v. Lang*, Case No. 15-cv-487-NJR-DGW), to also represent him in the present case. He asserts that Attorney Gianaris "does not mind" representing him in this case if the Court "will let him" (Doc. 5, p. 1).

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff's motion is unusual in that he claims that he has an attorney who is willing to represent him on this case, if the Court will appoint him. Plaintiff does not provide any confirmation of this from Attorney Gianaris himself. It is unclear why a court appointment would be necessary, as an attorney is free to enter into a representation agreement with a client, without being directed to do so by the Court.

As to the second inquiry, Plaintiff reveals that he has a limited education – but just how limited is unclear. Oddly, one page of his motion notes that he ended his education with the

Seventh Grade, but on a different page, he claims that he attended "some high school." (Doc. 5, pp. 2, 4). He also claims to have some degree of impairment in comprehension and memory as a result of brain surgery and an aneurism. Nonetheless, the complaint and attached documents reflect that Plaintiff can write clearly and is capable of stating the relevant facts and his legal claims. At this juncture, Plaintiff will be given another opportunity to properly plead his claims in a single, coherent complaint. It appears to the Court that he has the ability to do this. Plaintiff alone has knowledge of the relevant facts in support of his claims, and no legal training or expertise is required to set them down on paper.

Notably, Plaintiff is no longer a prisoner. This opens the possibility that Plaintiff may have more resources at his disposal to obtain legal counsel than when he filed the original motion. As well, he no longer faces the obstacles presented by pursuing litigation while in prison. For these reasons, the recruitment of counsel is not warranted at this time and the motion (Doc. 5) is **DENIED without prejudice**. The Court will remain open to appointing counsel as the case progresses.

The motion for status and copies (Doc. 14) is **GRANTED.** First, the status of this action is reflected in this Order. As to the request for copies of the 401-page set of documents submitted on November 23, 2015, the Court does not ordinarily provide copies of documents free of charge, even for indigent plaintiffs. Copies of court documents are available at the cost of $0.50 per page, paid in advance.[4] According to the standard procedure of the Clerk's office, the original 401 pages that Plaintiff mailed to the Court were shredded after they were scanned and the electronic versions were placed in the Clerk's "Proposed Prisoner Documents" folder.

---

[4] *See* 28 U.S.C. § 1914(b). As a general rule the District Clerk will mail paper copies of any document to a party only upon prepayment of the required fee. According to 28 U.S.C. § 1914(b), "[t]he clerk shall collect from the parties such additional fees only as are prescribed by the Judicial Conference of the United States." The Judicial Conference Schedule of Fees §(4) provides that a fee of $.50 per page shall apply for reproducing any record or paper.

Therefore, the originals are no longer available to be "returned" to Plaintiff. Pursuant to this Order, the electronic documents shall not be filed of record in the Court's docket. Under these unusual circumstances, and because Plaintiff states that he may need some of the documents for his other active case in this Court, the Court will make a one-time exception and send copies of the 401 pages to Plaintiff, free of charge. If Plaintiff wishes to have copies of any other documents, however, he shall be required to pre-pay the copying fee.

### Disposition

**IT IS ORDERED** that if Plaintiff wishes to amend the original complaint at Doc. 1, he shall file his First Amended Complaint within 35 days of the entry of this order (on or before **October 25, 2016**). It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 15-cv-1214-NJR. The amended complaint shall present each distinct claim in a separate count. In each count, Plaintiff shall specify, *by name*,[5] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of

---

[5] Plaintiff may designate an unknown Defendant as John or Jane Doe, but he should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

Plaintiff's claims and must stand on its own, without reference to any other pleading. If the First Amended Complaint does not conform to these requirements, it shall be stricken. Plaintiff must also re-file any *relevant* exhibits he wishes the Court to consider along with the First Amended Complaint. Voluminous exhibits are discouraged at this early stage of the case. If Plaintiff does not submit an amended complaint within the above deadline, the Court shall proceed to review the original complaint pursuant to 28 U.S.C. § 1915A.

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint, if one is filed, or of the original complaint, if Plaintiff chooses to stand on that pleading.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 20, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**